PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN LANZER, | ) | |
| | ) | CASE NO. 5:13cv2251 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CITY OF LOUISVILLE, OHIO, *et al*., | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Regarding ECF Nos. 11; 21; 28 |

Pending before the Court is the Motion for Judgment on the Pleadings on Count One pursuant to Fed. R. Civ. P. 12(c) filed by Defendants City of Louisville, Ohio, and Louisville City Council members Patricia Fallot, Richard Guiley, Guy Guidone, Cheryle Casar, and Thomas McCallister ("City Defendants"). ECF No. 21. Also pending is Defendant Thomas E. Ault's Motion for Partial Judgment on the Pleadings (collectively, "the Motions on the Pleadings"). ECF No. 28. In addition, Defendant William Jeffries filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1). ECF No. 11. The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons that follow, the Court (1) grants the Motions on the Pleadings as to Count One; and (2) grants Jeffries's Motion to Dismiss.

(5:13cv2251)

## I. Background[1]

Plaintiff Kevin Lanzer was hired as the Fire Chief of Louisville, Ohio on June 25, 2012.  ECF No. 1 at 4, ¶ 10.  A year later, Defendant Ault, the Louisville City Manager, conducted a performance appraisal of Plaintiff's employment.  Id. at 4, ¶ 11.  Ault gave Plaintiff a positive evaluation and recommended a three percent merit raise, which Plaintiff received.  Id.

On July 31, 2013, Louisville Fire Captain Rob Yoder, at the direction of Plaintiff, examined and inspected the building and premises known as Parksite Warehouse #2, located at 3662 Tulane Street in Louisville ("the Property").  Id. at 5, ¶ 18.  The inspection was in accordance with the regulations laid out by the Ohio Fire Code, which has been adopted by the City of Louisville through its Charter ("the Charter").  Id. at 4, ¶ 11-14.  Ohio law mandates that if a citation for violation of the fire code is given, a copy of the citation "shall be prominently posted . . . at or near each place a violation referred to in the citation occurs."  Id. at 5, ¶ 16 (citing R.C. 3737.42).

Yoder found violations of the Ohio Fire Code at the Property.  Id. at 5-6, ¶ 18.  He gave notice of the alleged violations to the responsible party and allowed the responsible party time to remedy the violations.  Id. at 5, ¶ 17-6, ¶ 19.  Yoder re-examined the Property on August 29, 2013, in accordance with Ohio Law, the Charter, and the policies and procedures of the Louisville Fire Department.  Id. at 6, ¶ 19.  He found the violations had not been remedied and caused a second notice of alleged violations to be given to the responsible party.  Id. at 6, ¶ 19.

---

[1]  The facts presented as background are taken from Plaintiff's Complaint.  In a motion for judgment on the pleadings, the Court presumes all well-pleaded allegations to be true.  *See Tucker v. Middleburg-Legacy Place, 539 F.3d 545, 549 (6th Cir. 2008)*.

2

(5:13cv2251)

On or about September 3, 2013, Defendant Jeffries, the owner of the Property, contacted Ault.  *Id.* at 6, ¶ 20-21.  Jeffries told Ault that he intended to contact the Louisville City Council and seek Plaintiff's removal from office because he was dissatisfied with the inspections, reports, and signage.  *Id.* at 6, ¶ 21.  Thereafter, Ault requested that Plaintiff provide written instructions to the fire safety inspectors mandating that property owners be contacted before any examination or inspection and that property owners accompany the inspector during the process.  *Id.* at 6, ¶ 22.  Plaintiff did so on September 4, 2013.  *Id.* at 7, ¶ 23

On or about September 9, 2013, the Louisville City Council called a special meeting and went into executive session along with Ault.  *Id.* at 7, ¶ 24.  Following the meeting, Ault requested that Plaintiff report to the meeting hall.  *Id.* at 7, ¶ 24.  Plaintiff alleges that when he arrived, Ault informed him that the Louisville City Council had instructed Ault to terminate Plaintiff and advised Ault that if he failed to do so, Ault would be terminated.[2]  *Id.* at 7, ¶ 24.  Plaintiff asked Ault why he was being terminated.  *Id.*  Plaintiff alleges that Ault informed him that he had done nothing wrong and was being terminated solely for political reasons.[3]  *Id.*

Plaintiff filed the instant lawsuit alleging one federal claim and four state law claims.  *Id.* at 8, ¶ 28-11, ¶ 56.  Count One, the federal claim, alleges that City Defendants and Ault deprived Plaintiff of a protected property interest in continued employment, granted by the Charter, without

---

[2]  City Defendants deny that Ault was told to either terminate Plaintiff's employment or face termination of his own employment.  ECF No. 8 at 3, ¶ 24.  Ault admits this allegation. ECF No. 9 at 6, ¶ 44.

[3]  Both City Defendants and Ault deny this allegation.  ECF No. 8 at 3, ¶ 24; ECF No. 9 at 6, ¶ 44.

(5:13cv2251)

due process of law in violation of 42 U.S.C. § 1983. *Id*. at 9, ¶ 29-32. Count Two is a breach of contract action against City Defendants and Ault. *Id*. at 9, ¶ 36-39. Count Three is a public policy tort claim against City Defendants and Ault. *Id*. at 10, ¶ 41-45. Count Four alleges a civil conspiracy tort claim against all Defendants. *Id*. at 11, ¶ 47-51. Finally, Count Five is a tortious interference claim against Defendant Jeffries. *Id*. at 11, ¶ 53-56.

## II. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing authorities).

In other words, claims set forth in a complaint must be plausible, rather than conceivable. *Twombly*, 550 U.S. at 570. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that

4

(5:13cv2251)

the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. Pro. 8(a)(2)).  The

factual allegations in the complaint "must contain something more . . . than . . . merely creat[ing] a

suspicion of a legally cognizable right." *Twombly*, 550 U.S. at 555-56 (quoting 5 C. WRIGHT & A.

MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, p. 235–236 (3d ed. 2004)).  In addition to

reviewing the claims set forth in the complaint, a court may also consider exhibits, public records,

and items appearing in the record of the case as long as the items are referenced in the complaint and

are central to the claims contained therein. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426,

430 (6th Cir. 2008).

### B.   Federal Rule of Civil Procedure 12(c)

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is reviewed under

the  same  standard  applicable  to  a  motion  to  dismiss  under  Rule  12(b)(6).   *Tucker  v.*

*Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).   Additionally, a motion brought

pursuant to Rule 12(c) is appropriately granted "when no material issue of fact exists and the party

making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank*, 510 F.3d at

582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir.

1991)).

### III.  Discussion

### A.  Count One—42 U.S.C. § 1983 Against City Defendants and Ault

In Count One of the Complaint, Plaintiff alleges that, through his termination, City

Defendants and Ault have deprived him of his property interest in continued employment without

5

(5:13cv2251)

procedural due process.[4]  ECF No. 1 at 8, ¶ 29-32.  Plaintiff claims that this property interest is created through the Charter.  Id. at 8, ¶ 29.  City Defendants and Ault maintain that the Charter allows for termination of an unclassified employee, such as the Fire Chief, without process or right of appeal.  ECF Nos. 21 at 7-13; 28 at 5-7.

42 U.S.C. § 1983 creates a civil cause of action for the unlawful "deprivation of any rights, privileges or immunities secured by the [United States] Constitution and laws[.]"  Continued employment can constitute a property interest so as to be protected by one's right to procedural due process under the Fourteenth Amendment of the United States Constitution.  Bd. of Regents of State College v. Roth, 408 U.S. 564, 576-77 (1972).  A property interest is not created through the constitution or mere expectation, desire or need.  Id. at 577.  Rather, a property interest is created through an independent legal source such as a state law or a contract that creates an expectation of a secured entitlement.  Id. at 577-78.  If it is found that an individual holds a legitimate property interest, the individual has a constitutional right to a hearing conducted in a "meaningful" time and manner prior to deprivation of the property interest.  Brock v. Roadway Exp., Inc., 481 U.S. 252, 261 (1987) (citing Mathews v. Eldridge, 424 U.S. 319, 333 (1976)).

### 1. Legal Authority

---

[4]  In Plaintiff's prayer for relief, he mentions, for the first time, an implicated "liberty interest."  ECF No. 1 at 12, ¶ 1, 4.  While loss of employment may implicate one's liberty if the infringement somehow prevents the party from seeking new employment (either by stigmatizing one's reputation or otherwise constraining the party's ability to find a new job), Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972), because the neither the complaint nor any of Plaintiff's subsequent pleadings aver an implication of a liberty interest, the Court does not consider this purported claim and proceeds as if Plaintiff had written property interest.

6

(5:13cv2251)

The Court relies on state law to determine whether Plaintiff has a property interest in his continued employment. *Freeze v. City of Decherd, Tenn.*, - - - F.3d - - -, 2014 WL 2483577, at *4 (6th Cir., June 4, 2014) (citing *Roth*, 408 U.S. at 577; *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)). Ohio law recognizes that unclassified public employees are generally at-will employees subject to termination without process. *See Slyman v. City of Piqua*, 494 F.Supp.2d 732, 737 (S.D.Ohio 2007), *aff'd* 518 F.3d 425 (6th Cir. 2008); *Corbett v. Garland*, 228 F. App'x 525, 527 (6th Cir. 2007); *Olander v. Ohio Envtl. Prot. Agency*, 732 N.E.2d 400, 402 (Ohio Ct. App. 1999) (citing *Eudela v. Ohio Dep't of Mental Health & Mental Retardation*, 506 N.E.2d 947, 948-949 (Ohio Ct. App. 1986)). At-will employment, however, can be modified through an agreement. *See McIntosh v. Roadway Express, Inc.*, 640 N.E.2d 570, 573 (Ohio Ct. App. 1994) (citing *Fawcett v. G. C. Murphy & Co.*, 348 N.E.2d 144 (Ohio 1976)); *Humphreys v. Bellaire Corp.*, 764 F. Supp. 489, 492-493 (S.D. Ohio 1991) *aff'd*, 966 F.2d 1037 (6th Cir. 1992). Such modifications can be made through documents such as an employee handbook or policy manual. *Smiddy v. Kinko's, Inc.*, 2003 WL 203576, at *5 (Ohio Ct. App. Jan. 31, 2003) (citing *Mers v. Dispatch Printing Co.*, 483 N.E.2d 150 (Ohio 1985); *Uebelacker v. Cincom Systems, Inc.*, 549 N.E.2d 1210 (Ohio Ct. Ap. 1988)). "In order to have this effect, however, both parties must have intended for the language [] to be legally binding. In other words, the employee's belief that the [document] affords him contractual rights does not mean that it does unless the employer intends it to do so." *Id*.

Plaintiff alleges that the Charter creates a property interest in his employment. ECF No. 1

(5:13cv2251)

at 8, ¶ 29. The Court's reading of the Charter is informed by the rules of statutory construction.[5]

When interpreting statutory language such as the Charter, the Court looks to the plain meaning.

*Ashland Hosp. Corp. v. Serv. Employees Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 741 (6th

Cir. 2013) (citing *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240-241 (1989)). If the

plain meaning is clear, the analysis ends and the Court is bound by the language. *Id.* The language

is to be construed as a consistent whole rather than as "isolated provisions." *Gustafson v. Alloyd

Co., Inc.*, 513 U.S. 561, 568 (1995).

### 2. Plaintiff's allegations

Plaintiff alleges that Article III, Section 2 of the Charter creates a property interest in

continued employment because it authorizes the City Manager to only terminate officers and

employees of the city "for the good of the service." ECF No. 1 at 8-9, ¶ 28-35. Plaintiff contends

that "Ault, and/or the members of Louisville City Council terminated Lanzer's employment without

affording him the due process rights to which he was entitled under the United States Constitution,

and in violation of his right to continued employment, in violation of the Louisville City Charter."

*Id*. at 8, ¶ 30. City Defendants and Ault argue that the "for the good of the service" provision only

applies to classified employees. ECF Nos. 21 at 10; 28 at 7.

---

[5] Courts generally construe a city charter using the same tools of statutory interpretation
as a court would use to construe a statute. *See Silberstein v. City of Dayton*, 440 F.3d 306, 312
(6th Cir. 2006); *In re Wilcox*, 233 F.3d 899, 906 (6th Cir. 2000); *Sommer v. City of Dayton,
Ohio*, 556 F. Supp. 427, 431 (S.D. Ohio 1982).

(5:13cv2251)

The relevant portions of the Charter are as follows:

Article III, Section 2 Powers and Duties

The City Manager shall be the chief executive officer and the head of the administrative branch of the City government.  He shall be responsible to the Council for the proper administration of all affairs of the City and to that end, *subject to the personnel provisions of this Charter, he shall have power and shall be required to*:

(1) *Appoint and, when necessary for the good of the service, remove all officers and employees of the City except as otherwise provided by this Charter* and except as he may authorize the head of a department or office to appoint and remove subordinates in such department or office;

ECF No. 8-1 at 14 (emphasis added).

Article VII, Section 2 Unclassified and Classified Service

The civil service of the City shall be divided into the unclassified and classified service.  The unclassified service shall comprise the following offices and positions:

(1) Elective officers and persons appointed to fill vacancies in elective offices;
(2) The City Manager and other appointive positions created by this Charter;
(3) Members of boards and commissions appointed by the Council and advisory committees appointed by the City Manager;
( 4) Employees of professional qualifications engaged as consultants;
(5) Secretary to the City Manager, and one secretary to each department or commission, when a secretary is authorized by ordinance or by this Charter;
(6) The City Clerk;
(7) *Heads of all departments*, their assistants and division heads within departments, *including the Divisions of Police and Fire*;
(8) Unskilled labor;
(9) Temporary employees and part-time employees;
(10) Volunteer members of the Division of Fire, members of the auxiliary police unit with the Division of Police, and part-time employees of the Divisions of Police and Fire.

*Id*. at 20 (emphasis added).

Article X, Section 3 Removal of Officer and Employees

9

(5:13cv2251)

> *Subject to the provisions of Article VII of this Charter*, *any officer or employee to whom the City Manager, or head of any office, department or agency, may appoint a successor, may be removed by the Manager or other appointing officer at any time*, and the decision of the Manager, or other appointing officer shall be final and there shall be no appeal therefrom to any other office, body or court whatsoever.

*Id*. at 25 (emphasis added).

Article VII, Section 2 of the Charter creates two classes of city employees—classified employees and unclassified employees. ECF No. 8-1 at 20. Plaintiff's position is designated as unclassified employement.[6] *See Id*.; ECF No. 30 at 5, n.1. Plaintiff alleges, however, that the "for the good of the service" provision in Article III, Section 2 modifies the at-will employment agreement and confers a property interest upon unclassified employees. ECF No. 1 at 8 ¶ 29-31. City Defendants and Ault assert that because the Charter designates between classified and unclassified employees, the "for the good of the service" provision applies only to classified employees. ECF Nos. 21 at 9-10; 28 at 6-7. City Defendants submit that "the 'when for the good of the service' language, which is limited by the qualifier 'except as otherwise provided by this Charter,' should be interpreted to mean that classified employees may only be removed for cause." ECF No. 34 at 7.

City Defendants rely on *Temple v. City of Dayton*, 2005 WL 38743 (Ohio Ct. App. Jan. 7, 2005). In *Temple*, the court considered Section 100 of the Dayton City Charter:

---

[6] Based on the facts alleged in the pleadings it would appear that the Fire Chief is the head of the Louisville Fire Department, as identified in the Charter. ECF No. 8-1 at 20. No party has suggested otherwise.

10

(5:13cv2251)

> An employe [sic] shall not be discharged or reduced in rank or compensation until he has been presented with reasons for such discharge or reduction, specifically stated in writing, and has been given an opportunity to be heard in his own defense. The reason for such discharge or reduction and any reply in writing thereto by such employe [sic] shall be filed with the Board.

*Id*. at *8 (alteration in original).  And Section 48:

> [The city manager has the power and duty] (B) To appoint and, except as herein provided, remove all directors of the departments and all subordinate officers and employes [sic] in the departments in both the classified and unclassified service; all appointments to be upon merit and fitness alone, and in the classified service all appointments and removals to be subject to the civil service provisions of this Charter.

*Id* (alteration in original).  The Dayton Charter also had a provision dividing city employees into classified and unclassified categories.  *Id*. at 5.

The plaintiff in *Temple*, an unclassified employee, argued that Section 100 is "binding on the City of Dayton for all employees—classified and unclassified" *Id*. at *7.  She argued that the city did not follow the proper procedures provided in Section 100 when it terminated her employment. *Id*.  The court found otherwise.  The court, "[r]eading the Charter as a whole," considered Section 100 and Section 48 in conjunction with one another.  *Id*. at *8.  The court reasoned that unclassified employees "can be summarily discharged," and "a contrary interpretation would [] conflict with the general understanding under Ohio law concerning the status of unclassified employees, to wit: that they can be removed summarily and without preferment of charges.  More importantly, a contrary interpretation of § 100 would conflict with the meaning of § 48(b) of the charter."  *Id* (quoting *Johnson v. City of Dayton*, 1981 WL 2562 (Ohio Ct. App. Oct. 7, 1981); *Sommer v. City of Dayton*, 556 F.Supp. 427 (S.D.Ohio 1982)).

11

(5:13cv2251)

The court in *Temple* relied on *Johnson* and *Sommer*, two cases that examined the Dayton City Charter.  The Charter in the instant case is similar to the Dayton charter in that both contain a section dividing employees into classified and unclassified sections.  Also, both charters contain a section that, when read in isolation, could be reasonably interpreted to apply to all employees—Article III, Section 2 of the Louisville City Charter, and Section 100 of the Dayton City Charter.

Section 48 of the Dayton City Charter, however, expressly provides that the City Manager may only remove classified employees "subject to the civil service provisions of this Charter." *Temple*, 2005 WL 38743 at *8.  The court in *Sommer*, considering the same provision, observed that Section 48 "expressly provides that the City Manager can remove *classified* employees subject to the civil service provisions (§§ 93–107 of the Charter), suggesting that *unclassified* employees can be removed without being subject to § 100 or any other civil service provisions in the charter." 556 F.Supp. at 431.  Such an express provision is lacking in the instant Charter.  Instead, Article III, Section 2 reads that the City Manager may "[a]ppoint and, when necessary for the good of the service, remove all officers and employees of the City except as otherwise provided by this Charter." ECF No. 8-1 at 14.  The express language "except as other wise provided by this Charter" does not, unlike the Dayton City Charter, single out the classified service for special consideration.

The instant Charter does, however, contain the provision in Article III, Section 2: that the City Manager, "*subject to the personnel provisions of this Charter*," shall "[a]ppoint and, when necessary for the good of the service, remove all officers . . ." ECF No. 8-1 at 14 (emphasis added).  Moreover, Article X, Section 3, entitled "Removal of Officers and Employees," is also

12

(5:13cv2251)

"[s]ubject to the provisions of Article VII of this Charter."[7] *Id.* at 24.  It is well-settled that unclassified employees are at-will and have no property interest in continued employment.  *See Christophel v. Kukulinsky*, 61 F.3d 479, 482 (6th Cir.1995) (under Ohio law, unclassified employees have "no property right to continued employment"); *Slyman*, 494 F.Supp.2d at 737; *Temple*, 2005 WL 38743, at *8.  Thus, the "for the good of the service" language, subject to the division of classified and unclassified employees, does not apply to unclassified employees.  *See id.* ("a contrary interpretation would . . . conflict with the general understanding under Ohio law concerning the status of unclassified employees, . . ." quoting *Sommer*, 556 F.Supp. at 431) (internal quotation marks and alteration omitted).

Because the Charter does not create a right to continued employment for unclassified employees such as Plaintiff, the Court grants the Motions for Judgment on the Pleadings as to Count One filed by City Defendants and Ault.

### B. Supplemental Jurisdiction

Defendants submit that, without a viable federal claim, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  ECF Nos. 21 at 19; 28 at 9.  When considering whether to exercise supplemental, or pendent, jurisdiction over state law claims, the Court

> should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues. The court also may consider whether the plaintiff has used manipulative tactics to

---

[7]  Article VII, entitled "Department of Personnel," contains the personnel provisions of the Charter.  *Id.* at 20.  Section 2 lists the categories of unclassified and classified service.  *Id.*

(5:13cv2251)

>defeat removal and secure a state forum, such as simply by deleting all federal-law
>claims from the complaint and requesting that the district court remand the case.

*Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004) (internal quotation marks and citations omitted); *see also Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Id.* at 952 (internal quotation marks and citation omitted).

Although the Court has invested time and effort regarding this litigation, the Court finds that, balancing the interests described above, needlessly deciding state law issues weighs most heavily against the exercise of jurisdiction. Plaintiff's state law claims are complicated and, in some instances, involve untested applications of Ohio state law that would be best served by Ohio state courts adjudicating the matter. *See Id.* at 953 (affirming the district court's ruling declining to exercise jurisdiction because it would require "needlessly resolving issues of state law.).

Therefore, the Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. These state law claims, therefore, are dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction). *See also Williams v. City of River Rouge*, 909 F.2d 151, 157 (6th Cir. 1990) ("Where an action in federal court includes both federal and pendent state claims and the court dismisses the federal claims before trial on a motion for summary judgment, the pendent state claims are ordinarily dismissed as well.").

14

(5:13cv2251)

### IV.  Conclusion

For the reasons explained above, the Court issues the following Orders:

(1)  The Motions for Judgment on the Pleadings as to Count One filed by City Defendants and Ault (ECF Nos. 21; 28) are granted.

(2)  The Court declines retention of jurisdiction over the state law claims (Counts Two through Five), which are dismissed without prejudice.


IT IS SO ORDERED.


August 18, 2014                    /s/ Benita Y. Pearson
Date                               Benita Y. Pearson
                                   United States District Judge

15